UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMUEL S. GUZIK, *d/b/a* GUZIK & ASSOCIATES,

                                         Plaintiff,

                    -v-

DARA S. ALBRIGHT,

                                         Defendant.

16-CV-2257 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    This is a dispute between a lawyer and his former client.  Plaintiff Samuel S. Guzik seeks to recover in quantum meruit for legal services rendered prior to his resignation.  Defendant Dara Albright filed counterclaims against Guzik for (1) legal malpractice, (2) tortious interference with contract, (3) tortious interference with business relations, (4) breach of confidentiality, (5) defamation, and (6) intentional infliction of emotional distress.  Both parties move for summary judgment on Guzik's quantum meruit claim and Albright's first four counterclaims.  For the reasons that follow, Guzik's motion for summary judgment is granted as to Albright's counterclaims for malpractice, tortious interference with contract, and breach of confidentiality.  Both motions are denied as to all other claims and counterclaims.

## I.    Background

    Familiarity with the factual background of this dispute is presumed, based on this Court's two prior Orders and Opinions.  *See Guzik v. Albright*, No. 16 Civ. 2257, 2017 WL 3601244, at *1−2 (S.D.N.Y. Aug. 21, 2017) ("*Guzik II*"); *Guzik v. Albright*, No. 16 Civ. 2257, 2016 WL 6952347, at *1 (S.D.N.Y. Nov. 28, 2016) ("*Guzik I*").  The following additional facts are drawn from the parties' Rule 56.1 statements.  They are not subject to genuine dispute unless otherwise noted.

1

Albright is co-founder of LendIt Conference LLC ("LendIt") and another company called NowStreet LLC.  (Dkt. No. 177 ("Albright Decl.") ¶ 6.)  Albright sold her interest in NowStreet, which owns a one-third interest in LendIt, to Goodworld Creations LLC d/b/a Crowdnetic ("Crowdnetic").  In 2014, she sought rescission of the sale of NowStreet to Crowdnetic.  (Albright Decl. ¶ 6.)  Guzik represented Albright in her suit against Crowdnetic and in her pursuit of related claims against LendIt.  (Dkt. No. 179 ("Defs. CSOF") ¶¶ 3, 9.)

Guzik maintains that Albright orally agreed to compensate him on a contingency basis for representing her in these disputes with LendIt and Crowdnetic.  (Dkt. No. 164 ¶ 12.)  Albright disputes the existence of a formal contingency agreement but acknowledges that she intended to pay Guzik based on "his relative contribution to the final outcome" of the Crowdnetic litigation.  (Defs. CSOF ¶ 12.)  In December 2015, however, Guzik resigned as Albright's counsel.  (Defs. CSOF ¶ 13.)  He claims that he had a "fundamental disagreement" with Albright over how to litigate the case and whether to pursue settlement with LendIt.[1]  (Defs. CSOF ¶¶ 28, 31; Dkt. No. 183 ("Pls. CSOF") ¶ 22.)  Soon after Guzik's resignation, Albright reached a settlement with LendIt.  (Defs. CSOF ¶ 15.)  By February 2016, Albright had resolved her disputes with Crowdnetic as well.  (Defs. CSOF ¶ 18.)

After Guzik's resignation, Albright hired new counsel, and in February 2016, Guzik sent a letter to Albright's new lawyer stating that Guzik intended to "seek redress from the LendIt parties . . . through all lawful means."  (Defs. CSOF ¶ 35.)  Guzik also emailed Albright's counsel, stating that Guzik "intend[ed] to hold the LendIt associates fully accountable . . . for all

---

[1]     Notably, Guzik had resigned as Albright's counsel once before in August 2014, during the Crowdnetic litigation.  (Defs. CSOF ¶ 37.)

harm proximately caused by their misconduct" and to "empty their pockets."  (Defs. CSOF ¶ 36.)
LendIt then added an indemnification clause to its settlement with Albright.  (Defs. CSOF ¶ 40.)

On March 8, 2016, LendIt agreed to employ Albright as an at-will consultant with a
substantial salary.  (Defs. CSOF ¶ 44.)  LendIt canceled this employment agreement, however,
on March 10, 2016, after LendIt realized that Guzik had filed a charging lien against Albright.
(Defs. CSOF ¶ 45; Dkt. No. 162-23 at 230:17–231:12.)  (Albright maintains that cancellation of
the contract was motivated by Guzik's emails, sent on March 8, notifying LendIt of his intention
to name it as a relief defendant in his collection action.  (Defs. CSOF ¶ 45; Albright Decl., Ex.
U.))  On March 22, LendIt provided Albright with a new consulting agreement, which added a
provision for the escrow of Albright's consulting fees until resolution of unspecified "legal
matters."  (Defs. CSOF ¶ 46.)  Because of this escrow provision, Albright decided to reject the
amended consulting agreement.  (Defs. CSOF. ¶ 48.)

After his resignation in December 2015, Guzik began to seek compensation from
Albright for his legal services, and he sent Albright an invoice in March 2016 for all services
rendered from May 2014 to December 2015.  (Defs. CSOF ¶¶ 22−23.)  On March 28, 2016,
Guzik filed this lawsuit against Albright for his legal fees.  (Defs. CSOF ¶ 24.)  Albright,
proceeding *pro se*, filed counterclaims against Guzik for (1) legal malpractice, (2) tortious
interference with contract, (3) tortious interference with business relations, (4) breach of
confidentiality, (5) defamation, and (6) intentional infliction of emotional distress.  (Dkt. No. 41
¶¶ 81–107 of counterclaims.)

Guzik now moves for summary judgment on his claim for quantum meruit and on four of
Albright's counterclaims: tortious interference with contract, tortious interference with business

relations, legal malpractice, and breach of confidentiality.  (Dkt. No. 160.)  Albright's cross-motion seeks summary judgment on the same claim and counterclaims.  (Dkt. No. 175.)

## II.      Legal Standard

"Summary judgment is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact."  *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing Fed. R. Civ. P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52 (1986).  The Court may grant summary judgment only when the record discloses "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"The moving party bears the burden of disproving the existence of any genuine issue of material fact."  *Loccenitt v. City of New York*, No. 10 Civ. 8319, 2012 WL 5278553, at *3 (S.D.N.Y. Oct. 22, 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must 'set out specific facts showing a genuine issue for trial,' and cannot 'rely merely on allegations or denials' contained in the pleadings."  *Toshiba Corp. v. Am. Media Int'l, LLC*, No. 12 Civ. 800, 2012 WL 3822759, at *4 (S.D.N.Y. Sept. 4, 2012) (quoting Fed. R. Civ. P. 56(e)).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)) (internal quotation mark omitted).  And although a document filed *pro se* is construed liberally to raise the strongest argument it suggests, *see McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999), "mere 'conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment,'" *Cruz v. Midwood Ambulance & Oxygen Serv., Inc.,* 136 F.

App'x 414, 415 (2d Cir. 2005) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.

1996)).

New York law governs the parties' common law claims. *See Fed. Ins. Co. v. Am. Home

Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) (explaining that it "is sufficient to establish

choice of law" if "the parties agree that New York law controls").

## III. Discussion

### A. Plaintiff's Quantum Meruit Claim

Guzik moves for summary judgment on his claim for quantum meruit. As this Court

previously explained, a quantum meruit claim has four elements under New York law: "(1) the

performance of services in good faith, (2) the acceptance of the services by the person to whom

they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of

the services." *Guzik II*, 2017 WL 3601244, at *2 (quoting *Mid-Hudson Catskill Rural Migrant

Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)). An attorney who resigns

from representation, however, forfeits "any right to recover damages for services rendered on the

basis of quantum meruit" unless the resignation was for good cause. *Allen v. Rivera*, 509

N.Y.S.2d 48, 50 (App. Div. 2d Dep't 1986); *see also Stair v. Calhoun*, 722 F. Supp. 2d 258, 267

(E.D.N.Y. 2010) ("[A]ttorneys who terminate their representation are still entitled to enforce

their charging liens, as long as the attorney does not withdraw without 'good cause' and is not

discharged for 'good cause.'"). Because it is undisputed that Guzik resigned from representing

Albright, he must establish that he had good cause to withdraw.

Guzik argues that he had good cause to withdraw for two reasons: (1) Albright failed to

cooperate and rendered representation unreasonably difficult, and (2) Albright insisted on a

course of action with which Guzik fundamentally disagreed. (Dkt. No. 161 at 13–14). Both of

these reasons are based on the same underlying client conduct: Albright was eager to "settle [her]

5

claim" and "wanted to move on."  (Albright Decl., Ex. D, at 119:25−120:1, 120:8–9.)  Guzik

maintains that, following an unsuccessful settlement meeting with LendIt on December 16, 2015,

he advised Albright to "put pressure on LendIt" by propounding discovery and moving to

intervene in an arbitration between Crowdnetic and LendIt.  (Dkt. No. 162 ("Guzik Decl.")

¶¶ 40–41.)  He claims that Albright refused to allow him to implement his proposed litigation

and settlement strategy and foreclosed his ability to propound discovery to LendIt or to request

permission to intervene in the LendIt-Crowdnetic arbitration.  (Guzik Decl. ¶ 43.)  Based on this

disagreement over strategy, Guzik resigned.  (Guzik Decl. ¶ 45.)

 Albright's version of the events is substantially similar: She wanted to settle her dispute

with LendIt, while Guzik wanted to pursue a more aggressive strategy.  Albright submits e-mails

from Guzik following the unsuccessful December 16 meeting to illustrate his more

confrontational approach:

> If you want to throw in the towel today with LendIt, and hope that
> Crowdnetic wants to settle, that is your decision.  But I have done
> all this work to weaken Crowdnetic, so that you - and not LendIt -
> would get the benefit of my hard labor.  I have no desire to go
> forward working to advance the interests of Lendit, while they screw
> you and me - and line their pockets.  I am not wired that way.  Never
> will be.  Would rather walk away from this trainwreck and chalk it
> up to life experience.

(Albright Decl., Ex. H, at 5.)  Guzik also told Albright that he intended "to get real nasty with

[LendIt]" and "inflict some pain" because "they need to see some consequences to their actions -

if you don't agree you will need to find a new attorney.  I cannot be undercut by my client after

all this - would rather just walk away."  (Albright Decl., Ex. H, at 4.)

 Guzik has failed to meet his burden to demonstrate that, as a matter of law, Albright's

conduct gave him good cause to resign.  "Under New York law, good cause for withdrawal

exists where there are 'irreconcilable differences . . . with respect to the proper course to be

6

pursued in [the] litigation,' where 'the client flatly challenged [counsel's] loyalty and professional integrity,' or where 'the relationship between plaintiff[s] and [their] attorney ha[s] deteriorated to the point where further representation [is] inappropriate.'" *Karimian v. Time Equities, Inc.*, No. 10 Civ. 3773, 2011 WL 1900092, at *4 (S.D.N.Y. May 11, 2011) (alterations in original) (quoting *Lake v. M.P.C. Trucking Inc.*, 718 N.Y.S.2d 903, 904 (App. Div. 3d Dep't 2001)). However, withdrawal based on a client's "unreasonably difficult" behavior is permitted only in relatively extreme situations where, for example, the client hired "new or additional counsel who interferes with the strategies of the original attorney" or subjected the attorney to "insults, lying, foul language, accusations of unprofessional behavior, lack of cooperation, and [a] failure to communicate." *Louima v. City of New York*, No. 98 Civ. 5083, 2004 WL 2359943, at *61 (E.D.N.Y. Oct. 5, 2004) (first quoting N.Y. Comp. Codes R. & Regs. tit. 22, § 1200; last quoting *Casper v. Lew Lieberbaum & Co.*, No. 97 Civ. 3016, 1999 WL 335334, at *2 (S.D.N.Y. May 26, 1999)), *aff'd sub nom. Roper-Simpson v. Scheck*, 163 F. App'x 70 (2d Cir. 2006). Critically, the relevant "good cause" standard "is a higher standard than the 'satisfactory reason' requirement of Local Civil Rule 1.4 and requires a determination of which side is in fact responsible for the attorney-client conflict." *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950, 2005 WL 1963945, at *3 (S.D.N.Y. Aug. 15, 2005).[2]

Here, a genuine factual dispute exists as to whether Guzik's resignation was justified. *See Fischbarg v. Doucet*, 883 N.Y.S.2d 25, 25 (App. Div. 1st Dep't 2009). First, the record does not establish that Albright "render[ed] the representation unreasonably difficult for the lawyer to carry out employment effectively." *Karimian*, 2011 WL 1900092, at *5 (quoting N.Y. Comp.

---

[2]    Local Civil Rule 1.4 governs when an attorney who has appeared as attorney of record before this Court may be granted leave to withdraw.

Codes R. & Regs. tit. 22, § 1200) (internal quotation marks omitted) (deferring decision whether to confirm a charging lien in light of material issues of fact as to good cause).  Although there is evidence that Albright and Guzik disagreed over certain tactics, including whether to propound third-party discovery or to intervene in the Crowdnetic-LendIt arbitration, it is not clear that these two relatively minor strategic issues "rise to the . . . level of good cause required to overcome an attorney's responsibility to persist in a representation already begun."  *Karimian*, 2011 WL 1900092, at *5 (holding that it was "not clear" whether lawyer's allegations that client "sought to dictate the course of the litigation," without much evidentiary support, and that client "criticized him or was hostile" several times, were sufficient to establish good cause); *see also Borup v. Nat'l Airlines, Inc.*, 159 F. Supp. 808, 810 (S.D.N.Y. 1958) ("The mere fact that clients refuse to accept a settlement recommended by the attorney is not ground for his withdrawal.").  Moreover, a reasonable factfinder could conclude that Guzik's threats to resign if Albright did not follow his preferred course of action were unduly coercive, especially given that Guzik resigned less than two weeks before a summary judgment motion was due.  (*See* Dkt. No. 162-1.)  *See also Brooks v. Lewin,* 853 N.Y.S.2d 286, 287–88 (App. Div. 1st Dep't 2008) (denying charging lien because "demand by [attorneys] for a new engagement agreement while opposition papers were due, coupled with the threat that [they] would stop working on the matter, was coercive").  Finally, even assuming that the differences between Guzik and Albright were truly irreconcilable in December 2015, a reasonable factfinder could conclude, on the basis of Guzik's emails—which include aggressive (and, at times, offensive) language (*see* Albright Decl., Ex. H, at 6)—that *Guzik* was responsible for the deterioration of the attorney-client relationship.

Because genuine disputes of fact exist as to whether Albright rendered representation unreasonably difficult and whether any irreconcilable differences were in fact attributable to

Albright, both parties' motions for summary judgment on Guzik's quantum meruit claim are denied.[3]

### B.   Defendant's Tortious Interference Counterclaims

Albright asserts counterclaims for tortious interference with contract and for tortious interference with business relations.  (Dkt. No. 41 ¶¶ 86–97.)  "Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 727 (S.D.N.Y. 2014).

In contrast, claims for tortious interference with business relations face "a higher burden than . . . claim[s] of interference with an existing contract, as a plaintiff must show 'more culpable conduct on the part of the defendant.'"  *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 602 (S.D.N.Y. 2017) (quoting *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.S.2d 614, 621 (1996)).  A plaintiff suing for tortious interference with business relationship must prove that: "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest,

---

[3]        Guzik's motion to file a surreply (Dkt. No. 190) is denied as moot.  Guzik requested leave to file a surreply on the basis that Albright argued, for the first time on reply, that the parties had an "agreement" about fees.  For the aforementioned reasons, neither party is entitled to summary judgment, regardless of whether this agreement governed Albright and Guzik's relationship.

unfair, or improper means; and (4) the relationship is injured." *Id.* (quoting *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir. 1997)).[4]

Both parties seek summary judgment on Albright's claims for tortious interference with contract and tortious interference with business relations.  Two distinct incidents provide the factual predicates for both causes of action:  Albright claims that (1) Guzik tortiously interfered with her employment as a consultant for LendIt, and (2) Guzik tortiously interfered with her LendIt settlement agreement.  The Court addresses each incident in turn.

### 1.     Tortious Interference with Albright's Employment as a Consultant

As a threshold matter, Guzik argues that Albright's tortious interference with contract claim fails as a matter of law because the consulting agreement was terminable at will.  (Dkt. No. 161 at 22.)  "However, New York law recognizes that the at will relationship entails certain limited rights, including the right to maintain an action for tortious interference in certain limited situations."  *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) (internal citation omitted).  In particular, New York law recognizes a claim for tortious interference with an at-will contract provided that the at-will employee "allege[s] that a third party used wrongful means to effect the termination such as fraud, misrepresentation, or threats, that the means used violated a duty owed by the defendant to the plaintiff, or that the defendant acted with malice."  *Cohen v. Davis*, 926 F. Supp. 399, 403 (S.D.N.Y. 1996).

In other words, Guzik is incorrect that Albright cannot as a matter of law bring a claim for tortious interference with an at-will employment contract.  But because such a claim is subject to an extra element—in this case, a showing that Guzik either used wrongful means,

---

[4]     Courts use the terms "tortious interference with business relations" interchangeably with "tortious interference with prospective economic advantage."  *See, e.g.*, *Hadami*, 272 F. Supp. 3d at 602.

violated a duty to Albright, or acted with malice in effecting the termination of her at-will agreement—the New York Court of Appeals has explained that it should be treated as a claim for "interference with *prospective* contractual relations," *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 192 (1980) (emphasis added), which is essentially synonymous with tortious interference with business relations, *see, e.g.*, *Perros v. Cty. of Nassau*, 238 F. Supp. 3d 395, 403 (E.D.N.Y. 2017).

Because Albright's claim for tortious interference with her at-will contract is duplicative of her claim for tortious interference with business relations, the former is dismissed.

The Court now turns to the question whether Guzik tortiously interfered with Albright's business relationship as a consultant for LendIt. Guzik puts forth three reasons why Albright's claim for tortious interference with her consulting relationship should be dismissed: (1) Albright failed to demonstrate that Guzik had knowledge of the agreement; (2) Albright failed to establish that Guzik acted with a wrongful purpose; and (3) Guzik's actions did not cause injury to the consulting agreement. Genuine disputes of material fact regarding all three elements preclude summary judgment for either party.

First, the parties genuinely dispute whether Guzik knew of Albright's imminent employment as a LendIt consultant. "In a tortious interference action, a plaintiff is not required to prove that the defendant had perfect or precise knowledge of the terms and conditions of the contracts in issue. It is enough that the defendant who interfered have '[k]nowledge of the *existence* of the contract'" or business relationship. *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 775 (S.D.N.Y. 1990) (internal citation omitted) (quoting *Am. Cyanamid Co. v. Elizabeth Arden Sales Corp.*, 331 F. Supp. 597, 608 (S.D.N.Y. 1971)). Guzik maintains that he had no knowledge of Albright's consulting agreement: He avers that Albright never provided

him with any information regarding this new employment relationship prior to the parties' fee arbitration in California in June 2016. (Guzik Decl. ¶ 54.)

Albright responds that Guzik was "well aware" of her "ongoing business relationship with LendIt." (Albright Decl. ¶ 32.) She relies on the following evidence to support this contention: First, since February 2015, Guzik was aware of Albright's previous involvement as a co-founder of LendIt. (Albright Decl., Ex. J. at 304:5–18.) Second, Albright cites e-mails that Guzik sent following his resignation, in which he references Albright's prior "relationship with LendIt" and her "personal goals regarding the outcome" of her dispute with LendIt. (Albright Decl., Ex. X, at 3.) In February 2016, for example, Guzik wrote: "I sincerely hope that by April 2016 you are able to reclaim what is rightfully yours - being reunited with the company you have founded - something you deserve." (Albright Decl., Ex. X, at 5.) Based on these facts, a reasonable factfinder could conclude that Guzik was aware of Albright's business relationship with LendIt when Albright and LendIt entered into the consulting contract in March 2016.

Second, a genuine factual dispute remains as to whether Guzik "act[ed] with the sole purpose of harming the plaintiff, or, failing that level of malice, use[d] dishonest, unfair, or improper means" to interfere Albright's business relationship. *Hadami*, 272 F. Supp. 3d at 602. The key factual question can be framed more precisely, as Albright cannot seriously contend that Guzik acted with the *sole* purpose of harming her when he filed a charging lien and a lawsuit against Albright to collect fees. Guzik was indisputably motivated, at least in part, by his own economic interest. *See RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (dismissing tortious interference claim where "the only plausible inference to be made . . . [was] that the Counter–Defendants were motivated at least in part by their own economic interest"). Therefore, the question is whether Guzik used dishonest, unfair, or improper means.

Albright argues that Guzik used improper "litigation threats" to interfere with her consulting agreement.  (Dkt. No. 176 at 17.)  For purposes of a tortious interference claim, "'[l]itigation or the threat of litigation' is a wrongful means if (1) 'the claimant has no belief in the merit of the litigation' or, (2) 'having some belief in the merit of the suit, the claimant nevertheless institutes or threatens to institute litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.'"  *RFP LLC*, 788 F. Supp. 2d at 197 (brackets omitted) (quoting *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75 (2d Cir. 1986)).  Here, Albright claims that Guzik threatened to name LendIt as a "relief defendant" in his action to recover fees and to enforce his charging lien against Albright.  (Albright Decl., Ex. U, at 4.)  She attributes the termination of her consulting agreement, which had been finalized a few days earlier, to Guzik's emails to LendIt on those topics.  (Dkt. No. 176 at 17–18.)

Albright has not introduced any evidence demonstrating that Guzik disbelieves the merits of his charging lien or lawsuit, but she has at least raised a genuine factual dispute as to whether Guzik's litigation threats were lodged in bad faith.  Based on Guzik's emails expressing his vitriol for LendIt and his irritation with Albright (*see* Albright Decl., Ex. H.),[5] a reasonable factfinder could conclude that Guzik's litigation threats were motivated, at least in part, by a desire to harass them or otherwise interfere with their settlement after his resignation.  Therefore,

---

[5]   For example, Guzik referred to LendIt as "fraudsters" and "crooks in suits" who were "screw[ing]" him and Albright and "lin[ing] their pockets."  (Albright Delc., Ex. H at 2, 3, 5.)  As to Albright, Guzik told her he believed she was being "play[ed]" by LendIt, and that she was "undercut[ting] and "disappoint[ing]" him.  (*Id.* at 4, 5.)  In essence, Guzik's emails reflect a sense that Albright betrayed him, from which a reasonable factfinder could infer a vindictive motive underlying his subsequent actions.

a factual dispute also exists as to whether Guzik's litigation over his fees was instituted in good faith.

Finally, a genuine dispute of fact exists as to whether Guzik's threats of litigation caused harm to Albright's consulting relationship with LendIt.  To prevail on a claim for tortious interference, a plaintiff must establish causation by demonstrating "that she would have entered into an economic relationship but for the defendant's wrongful conduct."  *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 486 (S.D.N.Y. 2017) (quoting *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 598 (S.D.N.Y. 2014)); *see also Union Car Advert. Co. v. Collier*, 263 N.Y. 386, 401 (1934) ("A cause of action has also been recognized where a party *would* have received a contract but for the malicious, fraudulent and deceitful acts of a third party, such, for instance, as materially lying about him.").[6]

Here, Albright has adduced sufficient evidence of causation to survive summary judgment.  Albright signed the at-will consulting agreement with LendIt on March 8, 2016.  (Albright Decl., Ex. J, at 174:9–12.)  LendIt canceled this employment agreement, however, on March 10, 2016, after Guzik notified it of his lien against Albright and his intent to name LendIt as a relief defendant.  (Defs. CSOF ¶ 45; Dkt. No. 162-23 at 231:2–12.)  In fact, LendIt's representative testified that there was a direct causal connection between notice of Guzik's lien and the termination of Albright's contract.  (Albright Decl., Ex. J at 230:17–232:13.)  In light of

---

[6]     As courts in this circuit have previously noted, "[e]arlier cases hold that the plaintiff must prove that it 'would have received the contract' *but for* the interference.  Some later cases, however, appear to have adopted the less stringent 'reasonable certainty,' or 'reasonable expectation' test."  *Davidcraft Corp. v. Danu Int'l, Inc.*, No. 90 Civ. 6578, 1992 WL 162997, at *4 (S.D.N.Y. June 24, 1992) (internal citation omitted).  "But for" causation does appear to be the dominant standard, and it has been endorsed by the New York Court of Appeals (albeit in a timeworn case).  *See Union Car Advert. Co.*, 263 N.Y. at 401.  Nonetheless, because the Court concludes that genuine factual disputes as to causation remain under either standard, it need not decide between the two standards of causation at this juncture.

this evidence, causation is a question for the factfinder.  *See Perry v. Int'l Transp. Workers'*
*Fed'n*, 750 F. Supp. 1189, 1207 (S.D.N.Y. 1990).

Because genuine disputes of fact remain regarding three elements of Albright's claim for
tortious interference with her consulting agreement, the parties' cross-motions for summary
judgment are both denied.

### 2.     Tortious Interference with Albright's Settlement Agreement

The analysis is similar for Albright's claim for tortious interference with her LendIt
settlement agreement.  Again, Guzik argues that Albright's claim for tortious interference with
*contract* must fail given that the draft settlement agreement was never signed and therefore was
not a valid contract.  (Dkt. No. 161 at 23.)  That is correct, and this claim is dismissed insofar as
it purports to survive as a claim for tortious interference with contract.

However, it is well established that "the tortious interference prohibition extends to mere
negotiations," based on "[t]he principle . . . that he who has a reasonable expectancy of a contract
has a property right which may not be invaded maliciously or unjustifiably."  *Morse v. Swank,*
*Inc.*, 459 F. Supp. 660, 667 (S.D.N.Y. 1978) (second quoting *Hardy v. Erickson*, 36 N.Y.S.2d
823, 826 (Sup. Ct. 1942)) (collecting cases).  Interference with negotiations is actionable,
however, only if it satisfies the elements of a claim for tortious interference with prospective
contractual relations.  *See Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1141
(S.D.N.Y. 1996).  Consequently, as with Albright's claim with respect to the consulting
agreement, Albright's claim regarding the settlement is legally viable if it is construed as a
tortious interference with business relations claim predicated on Guzik's alleged tortious
interference with her *prospective* contractual relations.

To prevail on her claim for tortious interference with the settlement, Albright must
establish (1) she had a prospective contractual relationship with LendIt; (2) Guzik knowingly and

intentionally interfered with that relationship; (3) Guzik interfered for the sole purpose of

harming Albright, or used dishonest, unfair, or improper means; and (4) the interference caused

injury to her contractual relationship. *See Hadami*, 272 F. Supp. 3d at 602. Because genuine

factual disputes exist, neither party is entitled to summary judgment on Albright's settlement-

agreement claim.

First, Guzik argues that there is no evidence he engaged in wrongful conduct, pointing to

the fact that his only communications with LendIt during the relevant time were (1) his notice of

lien on February 27, 2016, and (2) his February 2016 emails to Albright and her counsel. (Dkt.

No. 182 at 14.) Guzik contends that "bare threats of litigation, without more, . . . are not . . .

sufficient to establish a claim for tortious interference . . . especially where . . . there was

substantial justification for these claims – to collect fees." (Dkt. No. 182 at 15.) But as

explained above, a genuine factual dispute exists as to whether Guzik's notice of lien and

litigation threats against LendIt were made in bad faith, even if they were justified in part by his

fee dispute with Albright.

Second, Guzik challenges causation based on the fact that he "threatened (only) Albright

and her attorney with litigation against LendIt." (Dkt. No 182 at 15 (emphasis omitted).)

Genuine factual disputes exist regarding causation as well. A reasonable factfinder could

conclude that that Guzik's notice of lien, which was communicated to LendIt directly, was a but-

for cause of LendIt's addition of an objectionable indemnification clause to the settlement

agreement. Moreover, a reasonable factfinder could conclude that Guzik's litigation threats,

even if communicated to Albright only, were a but-for and proximate cause of the harm to

Albright's settlement based on the "probable and foreseeable" eventuality that she would

communicate those threats to LendIt during settlement discussions. *Cf. FLB, LLC v. 5Linx*, 821

F. Supp. 2d 548, 561 (W.D.N.Y. 2011) ("A defendant intentionally procures a breach when he

'knows of a valid . . . contract' and 'commits an intentional act whose probable and foreseeable

outcome is that one party will breach the contract, causing the other party damage.'" (alteration

in original) (quoting *Leventhal v. Franzus Co., Inc.*, No. 88 Civ. 3547, 1988 WL 132868 at *7

(S.D.N.Y. Dec. 6, 1988))), *aff'd sub nom. FLB, LLC v. Cellco P'ship*, 536 F. App'x 132 (2d Cir.

2013).

       In light of the factual disputes regarding whether Guzik acted in good faith and whether

Guzik caused any injury, both parties' motions for summary judgment are denied.

### C.    Defendant's Malpractice Counterclaim

       "There are three elements to a claim of legal malpractice in New York: '(1) the

negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained;

and (3) proof of actual damages.'" *Carvel v. Ross*, No. 09 Civ. 0722, 2011 WL 856283, at *13

(S.D.N.Y. Feb. 16, 2011) (quoting *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000)), *report

and recommendation adopted*, No. 09 Civ. 722, 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011). "In

other words, a plaintiff in a legal malpractice action must demonstrate that the attorney failed to

exercise that degree of skill commonly exercised by an ordinary member of the legal community,

and that but for the failure to exercise that requisite degree of skill the result sought by the

plaintiff would or could have been achieved." *Zeitlin v. Greenberg, Margolis, Ziegler, Schwartz,

Dratch, Fishman, Franzblau & Falkin, P.A.*, 619 N.Y.S.2d 289, 290 (App. Div. 2d Dep't 1994).

Albright bases her malpractice counterclaim on three predicate acts of negligence: (1) Guzik

forwarded an unredacted copy of the complaint in *Goodworldcreations, L.L.C. v. Albright*, 14

Civ. 3848, to a reporter; (2) Guzik was "belligerent" during the December 16, 2015, settlement

meeting between LendIt and Albright; and (3) Guzik breached his duty of confidentiality to

Albright. (Dkt. No. 176 at 22–24.) The Court addresses each theory in turn.

### 1.     The *Goodworldcreations* Complaint

Guzik is entitled to summary judgment on the question whether he committed malpractice by forwarding the *Goodworldcreations* complaint to the media.  First, it is not clear that he breached any duty to Albright when he sent this document to the media:  Although the complaint was eventually sealed at *LendIt's* request to protect its confidential financial information (*see Goodworldcreations, L.L.C.*, 14 Civ. 3848, Dkt. Nos. 8 & 9), at the time Guzik forwarded the document, it was publicly accessible.  Second, Albright has failed to introduce any evidence that Guzik's action injured her.  Albright's theory is that Guzik "caused an initial strain in Albright's business relationship with LendIt" by publicizing the *Goodworldcreations* complaint.  (Dkt. No. 176 at 22.)  But "[m]ere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case sounding in legal malpractice." *Luniewski v. Zeitlin*, 591 N.Y.S.2d 524, 526 (App. Div. 2d Dep't 1992).  The speculative nature of Albright's claim renders it insufficient as a matter of law to establish causation.  *See Phillips-Smith Specialty Retail Grp. II, L.P. v. Parker Chapin Flattau & Klimpl, LLP*, 696 N.Y.S.2d 150, 151 (App. Div. 1st Dep't 1999).

### 2.     Guzik's Belligerent Conduct

Albright claims that Guzik's threat to "inflict some pain" on LendIt at the December 16, 2015, meeting was professionally negligent.  (Albright Decl., Ex. H, at 4.)

To survive summary judgment, a plaintiff in a malpractice case "cannot rest on [her] 'allegations of what [she] views as deficiencies in defendant's conduct as his attorney,' but must offer 'evidence to establish the standard of professional care and skill that [defendant] allegedly failed to meet."  *Hatfield v. Herz*, 109 F. Supp. 2d 174, 179 (S.D.N.Y. 2000) (last alteration in original) (quoting *Thaler & Thaler v. Gupta*, 617 N.Y.S.2d 605, 606 (App. Div. 3d Dep't 1994)). "The courts generally require malpractice plaintiffs to 'proffer expert opinion evidence on the

duty of care to meet their burden of proof in opposition to a properly supported summary judgment motion.'" *Joseph DelGreco & Co. v. DLA Piper L.L.P. (U.S.)*, 899 F. Supp. 2d 268, 278 (S.D.N.Y. 2012) (quoting *Hatfield*, 109 F. Supp. 2d at 179) (collecting cases), *aff'd sub nom. In re Joseph DelGreco & Co.*, 535 F. App'x 31 (2d Cir. 2013).  This requirement applies even if a plaintiff proceeds *pro se*, *see, e.g.*, *Wolfson v. Bruno*, 844 F. Supp. 2d 348, 356 (S.D.N.Y. 2011), and is generally excused only in "the unusual case, in which the facts are 'so egregious' as to make expert evidence unnecessary," *Joseph DelGreco & Co.*, 899 F. Supp. 2d at 278 (quoting *Nobile v. Schwartz*, 265 F. Supp. 2d 282, 290 (S.D.N.Y. 2003)).  Examples of such egregious conduct include "failure to follow direct orders from a court" and the "disregard or ignorance of . . . a clearly defined and firmly established rule."  *Joseph DelGreco & Co.*, 899 F. Supp. 2d at 278 (alteration in original) (second quoting *Northrop v. Thorsen*, 848 N.Y.S.2d 304, 308 (2007)).

Albright has failed to introduce any expert evidence on Guzik's duty of care, nor does she allege any conduct that is so egregious as to make expert testimony unnecessary.  Her allegations are based solely on Guzik's threat to inflict "pain" on LendIt, a litigation adversary.  A reasonable factfinder could not conclude that "pain" in this context meant to anything other than Guzik's intent to vigorously, perhaps aggressively, pursue Albright's claims against LendIt in the course of litigation.  (*See* Albright Decl., Ex. H, at 4.)  Guzik is entitled to summary judgment on the question whether his allegedly belligerent conduct breached his professional duty of care to his client.

### 3.    Breach of Confidentiality

Finally, Albright alleges that Guzik breached his duty of confidentiality to her.  Albright identifies the following alleged breaches of confidentiality: (1) disclosure of the *Goodworldcreations* complaint, (2) Guzik's threat to release confidential information from the

19

parties' fee arbitration in California, (3) Guzik's disclosure of the California arbitration award to the Court, (4) Guzik's breach of a confidentiality agreement with LendIt regarding settlement discussions on December 16, 2015, and (5) Guzik's disclosure of confidential information in his Answer to Albright's counterclaims.

At the outset, the Court notes that, besides Guzik's disclosures relating to the fee arbitration, none of these alleged breaches appears in Albright's counterclaim.  (*See* Dkt. No. 41 ¶¶ 76–78.)  As such, those allegations are not properly before the Court, *see, e.g.*, *Batts v. Richards*, 4 F. Supp. 2d 96, 97 n.1 (D. Conn. 1998)), and Albright has explicitly disclaimed any desire to amend her counterclaim (*see* Dkt. No. 187 at 17).  Nonetheless, in light of Albright's *pro se* status, the Court addresses each of her specific allegations.

First, as explained above, Guzik did not breach any duty to Albright, or cause her any non-speculative damage, by disclosing the *Goodworldcreations* complaint.

Second, Guzik's alleged (and apparently unconsummated) threat to disclose confidential information obtained during the fee arbitration did not amount to an actual breach of any duty, as no actual disclosure is alleged.  Moreover, Albright has identified neither the specific information Guzik wrongfully threatened to disclose nor the harm it caused her.

Third, Guzik did not breach any duty to Albright when he furnished a copy of the arbitration award to the Court.  At the initial pretrial conference on January 24, 2017, Guzik provided a copy of the arbitration award to the Court at the Court's request.  (*See* Dkt. No. 55.) Rule 1.6(b)(6) of the New York Rules of Professional Conduct permits an attorney to disclose confidential information "to comply with . . . [a] court order."  N.Y. Comp. Codes R. & Regs. tit.

22, § 1200.0.[7]  In addition, the arbitration award does not qualify as "confidential information"

for purposes of Guzik's duty of confidentiality because that information was not "gained during

or relating to the representation of" Albright.  *Id.* (Rule 1.6(a)).  Therefore, Guzik's disclosure to

the Court was permissible.

Fourth, Guzik's disclosures in his summary judgment brief regarding the December 16,

2015, LendIt settlement discussions did not violate a duty to Albright.  Under Rule 1.6(b)(5) of

the New York Rules of Professional Conduct, "[a] lawyer may reveal or use confidential

information to the extent that the lawyer reasonably believes necessary: . . . (i) to defend the

lawyer or the lawyer's employees and associates against an accusation of wrongful conduct; or

(ii) to establish or collect a fee."  N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0.  Here, the

settlement discussions, and Guzik's comportment during those discussions, are directly relevant

to Albright's malpractice claim, which is based in part on allegations of belligerent conduct at

---

[7]        The parties dispute whether New York's or California's Rules of Professional
Conduct govern Guzik's duty of confidentiality.  (*See, e.g.*, Dkt. No. 182 at 21–22; Dkt. No. 176
at 24–25.)  Because federal jurisdiction in this case is based on diversity, the Court applies New
York's conflict of laws rules.  New York Rule of Professional Conduct 8.5(b) governs choice of
law regarding attorney discipline.  *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0.  Rule
8.5(b)(1) provides:

> For conduct in connection with a proceeding in a court before which
> a lawyer has been admitted to practice (either generally or for
> purposes of that proceeding), the rules to be applied shall be the rules
> of the jurisdiction in which the court sits, unless the rules of the court
> provide otherwise.

*Id.*  Here, the underlying proceeding, *Goodworldcreations, L.L.C. v. Albright*, 14 Civ. 3848,
occurred in New York.  Therefore, the Court applies New York's Rules of Professional Conduct
to Albright's malpractice claim.

Moreover, even if California's rules governed, the Court concludes that those rules would
also permit disclosure of confidential client information pursuant to the authority of a federal
court.  *See* CA ST RPC Rule 3-100, cmt. 13 (explaining that other exceptions to confidentiality
may be recognized under California law, in addition to the explicit exception for preventing a
client from undertaking a criminal act).

that meeting.  Moreover, the December 16, 2015, settlement discussions are likely relevant to determining whether Guzik is entitled to collect legal fees, as Guzik contends he resigned for good cause based on a disagreement with his client over litigation and settlement strategy.  Guzik therefore did not breach any duty to Albright by referencing these discussions in his brief.

Fifth, and finally, Guzik did not breach any duty to Albright by disclosing confidential information about a medical issue in his Answer to her counterclaim.  Of Albright's five allegations, this is the most troubling: One should certainly be able to trust her attorney to maintain her medical condition in confidence.  Nonetheless, even though a lawyer's duty of confidentiality is of paramount importance and perpetual duration, *see People v. Twedt*, 794 N.Y.S.2d 823, 828 (Sup. Ct. 2005), it is "not absolute or impermeable," *Schaefer v. Gen. Elec. Co.*, No. 07 Civ. 858, 2008 WL 649189, at *7 (D. Conn. Jan. 22, 2008).  As explained above, a lawyer may disclose confidential information to the extent that information is reasonably necessary to his ability to establish or collect a fee.  N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 (Rule 1.6).  In her motion to dismiss, Albright put at issue Guzik's reasons for resigning after the December 16, 2015, settlement meeting with LendIt.  (*See* Dkt. No. 26 at 12.)  And the medical issue is central to her explanation as to why she suddenly became more amenable to settlement.  (*See, e.g.*, Dkt. No. 176 at 11.)  Although perhaps it would have been prudent for Guzik to use less specific language when discussing this issue in his Answer, it was not unreasonable for Guzik to believe this disclosure was necessary to pursue his claim for legal fees and his defense against Albright's counterclaims.  *See In re Koeppel*, 939 N.Y.S.2d 741, 2011 WL 4375059, *12 (Sur. Ct. 2011) (explaining that Rule 1.6(b)(5) justified former attorney's disclosures about client's finances where client put ability to pay at issue), *aff'd*, 944 N.Y.S.2d 48 (App. Div. 1st Dep't 2012).  In fact, Guzik's quantum meruit claim is based on the theory that

Albright and LendIt conspired against Guzik before the settlement meeting to reach a settlement that excluded his fee and thereby maximized Albright's proceeds.  (Dkt. No. 182 at 9.)  Whether Guzik's narrative of conspiratorial duplicity is more credible than Albright's story is for the factfinder to decide.  But Guzik's discussion of this issue in his Answer was not unreasonable under Rule 1.6(b)(5) as a matter of law.

In sum, Albright has not adduced sufficient evidence that Guzik breached a professional duty to her.  Therefore, Guzik's motion for summary judgment is granted on Albright's malpractice counterclaim.

### D.      Defendant's Breach-of-Confidentiality Counterclaim

Albright's breach of confidentiality counterclaim is based on her allegation that Guzik violated the confidentiality agreement governing the California fee arbitration proceedings between the parties.  This claim differs from Albright's claim for breach of the professional duty of confidentiality because it sounds in breach of contract.  *See Health All. Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 125–26 (S.D.N.Y. 2007), *aff'd*, 294 F. App'x 680 (2d Cir. 2008).  However, the only alleged breach she has identified is Guzik's disclosure of the arbitration award to the Court at the Court's request.  As discussed above, this disclosure is not actionable under the rules of professional conduct.  Moreover, equity prohibits the imposition of liability on Guzik for his compliance with a directive from this Court.  Because Albright has failed to adduce any other evidence of breach, Guzik is entitled to summary judgment on Albright's breach of confidentiality counterclaim.

### E.      Albright's Motion for Sanctions

Albright requests sanctions against Guzik for making "outrageously and flagrantly" false allegations against her.  (Dkt. No. 176 at 26.)  Albright previously moved for sanctions against Guzik on the same basis (*see* Dkt. No. 119), and that motion was denied by Magistrate Judge

Freeman (*see* Dkt. No. 158).  Albright did not object to Judge Freeman's ruling.  For the reasons given by Judge Freeman, Albright's motion for sanctions is denied.

## IV.   Conclusion

For the foregoing reasons, Guzik's motion for summary judgment is GRANTED IN PART.  Specifically, Albright's counterclaims for malpractice, tortious interference with contract, and breach of confidentiality are dismissed.  In all other respects, both parties' motions for summary judgment are DENIED.

The claims that remain for trial are (1) Guzik's claim for quantum meruit and (2) Albright's counterclaims for (a) tortious interference with business relations, (b) defamation, and (c) intentional infliction of emotional distress.

The parties shall appear for a conference on October 5, 2018, at 3:00 p.m. for the purpose of scheduling the trial and setting deadlines for pretrial filings.  The conference will be held in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.

The Clerk of Court is directed to close the motions at Docket Numbers 160, 175, and 190.

SO ORDERED.

Dated: September 14, 2018
       New York, New York

_____
J. PAUL OETKEN
United States District Judge