UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

SAMUEL S. GUZIK, *d/b/a* GUZIK &
ASSOCIATES,

                    Plaintiff,

         -v-

DARA S. ALBRIGHT,

                    Defendant.

16-CV-2257 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Following a bench trial in July 2019, this Court issued its findings of fact and conclusions of law in this case, finding in favor of Defendant Dara S. Albright on Plaintiff Samuel S. Guzik's claim for recovery of legal fees on a *quantum meruit* theory. Guzik has filed a motion to alter the judgment or, in the alternative, for a new trial. Defendant Dara S. Albright has filed an opposition to Guzik's motion with a request for sanctions. For the reasons that follow, Guzik's motion is denied and Albright's request for sanctions is denied.

**I.    Legal Standard**

Guzik moves pursuant to Rule 59 of the Federal Rules of Civil Procedure to alter or amend the judgment or, in the alternative, for a new trial.

Motions for a new trial under Rule 59(a) "are committed to the sound discretion of the district court," *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998), and should be granted only for substantial reasons such as a "manifest error of law or mistake of fact," *Ball v. Interoceanica Corp.*, 71 F.3d 73, 76 (2d Cir. 1995) (internal quotation marks and citation omitted). In bench trials, motions under Rule 59(e) are essentially motions for reconsideration. *See White v. N.H. Dept. of Emp't Sec.*, 455 U.S. 445, 451 (1982). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a

1

rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp.*, 156 F.3d at 144.

## II.     Discussion

For the reasons explained in detail in this Court's Findings of Fact and Conclusions of Law following a three-day bench trial, Guzik failed to establish his entitlement to recovery from Albright in *quantum meruit* because he resigned from the representation without just cause. *See Guzik v. Albright*, No. 16 Civ. 2257, 2019 WL 3334487 (S.D.N.Y. July 25, 2019) (Dkt. No. 273) ("Findings"). Guzik argues that the Court should reconsider its judgment or grant a new trial on three main grounds: (1) that the Court misconstrued New York law; (2) that the factual record established just cause for Guzik's resignation; and (3) that unconscious bias may have affected the Court's view of Guzik. The Court addresses each point in turn.

### A.     New York Law on Quantum Merit

Guzik's principal legal argument is that this Court's decision conflicts with the New York Court of Appeals decision in *Klein v. Eubank*, 663 N.E.2d 599 (N.Y. 1996). Specifically, Guzik contends that this Court applied an overly strict standard for "just cause" (or "good cause") that would allow a resigning attorney to recover in *quantum meruit* from his former client by enforcing a charging lien.

In *Klein*, New York's high court began with the following proposition: "It has long been held that attorneys who terminate their representation *for just cause* continue to be entitled to enforce their [charging] liens." *Id.* at 600 (emphasis in original) (citing cases). The court then made clear that attorneys do not forfeit their charging liens in situations where "the attorney's representation is discontinued by mutual consent for reasons not rising to the level of misconduct or 'just cause' on either side." *Id.* The court went on to describe such situations:

2

> Attorney-client relationships frequently end because of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by either the client or the lawyer. Others end because of unexpected conflicts of interests or changes in litigation strategy that require different lawyering skills. In some of those situations, the client may ask the attorney to withdraw. In others, it may be the attorney who initiates the termination process by offering to withdraw in order to avoid embarrassment, avert further conflict, preserve the relationship on a long-term basis or simply save the client from the discomfort of having to fire the attorney. Importantly, in many such cases, the decision to terminate the relationship is the product of a mutual choice.

*Id*. at 601. The court concluded: "[W]e hold that where an attorney's representation terminates and there has been *no misconduct, no discharge for just cause and no unjustified abandonment by the attorney*, the attorney's right to enforce the statutory charging lien is preserved without the need to resort to further negotiations or enter into new stipulations with the client." *Id.* at 601 (emphasis added). Finding disputed factual issues, the court remanded to the trial court for an evidentiary hearing on (1) whether the attorney had "abandoned his employment without just cause" — which the court characterized as a "factual claim [that] was vigorously disputed" — as opposed to having resigned by mutual consent, and (2) whether the attorney had resigned because of the client's "unreasonable demands" and therefore with just cause. *Id.*

This Court's decision is fully consistent with *Klein*. As the Court's Findings make clear, Guzik's resignation was *not* the product of "mutual consent" with his client. Nor was it occasioned by "unreasonable demands" or any other unreasonable conduct on the part of Albright. *See* Findings at *9–11. Guzik's resignation *was*, at a minimum, an "unjustified abandonment by the attorney." *Klein*, 663 N.E.2d at 601.

Guzik tries to characterize the termination of the relationship as resulting from "irreconcilable differences" and a "breakdown in trust." (Dkt. No. 283 at 12.) The problem with Guzik's argument is that it ignores this Court's findings as to why Guzik actually resigned. As the Court found, he resigned because he "wanted to hold out for a larger settlement" — because,

3

as he put it, "'this is my money too.'" Findings at *10. To be sure, strategic and tactical differences, as well as personality conflicts, may provide just cause for an attorney's resignation. *See Klein*, 663 N.E.2d at 600. But that principle does not extend to an attorney's disagreement with the client's decision to accept a settlement offer. Holding otherwise would be inconsistent with a fundamental rule governing the ethical conduct of attorneys: "A lawyer shall abide by a client's decision whether to settle a matter." N.Y. Rules Prof'l Conduct R. 1.2(a). As courts have long recognized, "the decision to settle is the client's to make, not the attorney's." *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2d Cir. 1989) (citing *United States v. Beebe*, 180 U.S. 343, 352 (1901)).

This Court's judgment was based on a proper application of New York law.

### B.     The Trial Record

Guzik next argues that the evidence at trial established just cause for his resignation. Guzik cites various pieces of evidence, arguing that they support his preferred outcome. The Court considered all of this evidence, as well as the extensive testimony of Guzik and Albright, during the bench trial. Based on all of the trial evidence, as well as the Court's findings as to credibility, the Court made detailed findings as to why Guzik had not proven that his resignation was for just cause. Guzik is now attempting to reargue how the Court should weigh the evidence, largely making arguments that his counsel made in closing argument. Such reargument does not provide a valid basis for relief under Rule 59. In any event, Guzik points to no evidence that the Court overlooked or that changes the Court's evaluation of the evidence at trial.[1] The Court adheres to its decision for all the reasons set forth in its Findings.

---

[1] In a supplemental filing, Guzik points out that the Court's Findings incorrectly referred to one of the many emails from Guzik to Albright (DX I9) as being from May 2016 rather than

### C. Unconscious Bias

Finally, Guzik expresses concern that "unconscious, unintentional bias may have affected this Court's view of Guzik, and the merits of his case, in a very material and adverse way." (Dkt. No. 283 at 24.) Specifically, Guzik cites a December 16, 2015 email to Albright in which he used an offensive word. He speculates that the Court might have become biased against him based on his use of that word.

Guzik's speculation is unfounded. The Court did not even refer to the email in question in its Findings. While the Court admitted the email at trial over Guzik's Rule 403 objection, it did so because the entire course of communications between the parties on the subject of the representation was highly probative on the issues being tried, and the probative value of the email was not outweighed (much less substantially outweighed) by the danger of unfair prejudice. Nor did the Court give undue weight to this single email or its use of a particular word, as opposed to the entirety of the communications between Guzik and Albright. The Court is confident that it did not allow bias or any other irrelevant consideration to play a part in its evaluation of the evidence or in its ultimate decision. Consistent with the oath that all federal judges take — to "administer justice without respect to persons," 28 U.S.C. § 453 — this case was decided based on an impartial weighing of the facts under the applicable law.

### D. Albright's Request for Sanctions

Albright asks the Court to impose sanctions against Guzik, arguing that Guzik's Rule 59 motion and his conduct during the litigation have been harassing and pursued in bad faith. With respect to Guzik's Rule 59 motion, although the Court is denying that motion, the Court does not

---

May 2017. (*See* Dkt. No. 295.) Neither this email nor its date was essential to the Court's decision.

find that it was filed in bad faith or vexatiously.  And while this case generally has been characterized by excess — excessive filings, excessive sanctions motions, and excessive vitriol — courts should be charitable in scrutinizing a party's motives and hesitant in inferring bad faith with respect to parties' filings and positions in a case.  The Court declines to award sanctions.

**III.    Conclusion**

For the foregoing reasons, Guzik's motion to alter the judgment or, in the alternative, for a new trial is DENIED.  Albright's request for sanctions is also DENIED.

The Clerk of Court is directed to close the motion at Docket Number 282.

SO ORDERED.

Dated: May 20, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge